UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN ALLEN LITTLE,

    Plaintiff,

v.                                                  Case No. 1:18-cv-1168
                                                  Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied his application for disability insurance benefits (DIB).

Plaintiff alleged a disability onset date of September 27, 2012. PageID.46. Plaintiff identified his disabling condition as back injury, spondylolisthesis, clinical depression, and anxiety. PageID.254. Prior to applying for DIB, plaintiff completed two years of college and had past employment as a management trainee, automobile salesperson, and finance coordinator. PageID.59. An administrative law judge (ALJ) reviewed plaintiff's application *de novo* and entered a written decision denying benefits on December 12, 2017. PageID.46-61. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

1

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923

(6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.    ALJ's DECISION

Plaintiff's application for DIB failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged onset date of September 27, 2012, and that he met the insured status requirements of the Social Security Act through December 31, 2015. PageID.48. At the second step, the ALJ found that

through the date last insured, plaintiff had severe impairments of lumbar spondylolisthesis/degenerative disc disease post fusion surgery; degenerative disc disease of the cervical, thoracic, and lumbar spine; major depressive disorder/mood disorder, panic disorder without agoraphobia; anxiety disorder, somatic symptoms disorder; and obesity. PageID.48. At the third step, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.49.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he could lift and carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for four hours total and sit for six hours total in an eight-hour workday. He could occasionally climb ramps and stairs, but never ladders, ropes or scaffolds, and occasionally balance, stoop, kneel, crouch, and crawl. The claimant was limited to doing simple, routine work that involves making simple work-related decisions and tolerating occasional workplace changes. He could have only occasional interaction with the general public, coworkers, and supervisors.

PageID.51. The ALJ also found that through the date last insured, plaintiff was unable to perform his past relevant work. PageID.59.

At the fifth step, the ALJ found that through the date last insured, plaintiff could perform a significant number of unskilled jobs at the light exertional level in the national economy. PageID.60-61. Specifically, the ALJ found that plaintiff could perform the requirements of unskilled, light work such as office helper (50,000 jobs), garment sorter (80,000 jobs), and folder (150,000 jobs). PageID.60-61. Accordingly, the ALJ determined that plaintiff was not under a disability, as defined in the Social Security Act, from September 27, 2012 (the alleged onset date) through December 31, 2015 (the date last insured). PageID.61.

### III. DISCUSSION

Plaintiff set forth two issues on appeal (with sub-issues):

**A. The ALJ's decision on plaintiff's residual functional capacity (RFC) is not supported by substantial evidence.**

Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence. RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c).

**1. The ALJ did not give proper weight to the opinion of treating physician Michael Clarke, M.D., as required by 20 C.F.R. 404.1527(c).**

An underlying issue in plaintiff's claim is whether his impairments are related to multiple sclerosis. The ALJ recognized this issue in determining plaintiff's severe impairments, observing that:

> Much of the record focuses on the possibility of multiple sclerosis based on imaging in June 2016. Notably, this is almost six months after the date last insured, but the objective imaging and two different neurologists did not diagnose the claimant with multiple sclerosis (see, Exhibit 21F and further discussion below). His clinical correlation coupled with objective testing and physical examination did not meet the criteria. Prior the date last insured, on December 31, 2015, there was no objective findings to corroborate this diagnosis and multiple sclerosis was not a medically determinable impairment.

PageID.49.

In his reply brief, plaintiff pointed out that Dr. Clarke's opinions involved the treatment of plaintiff's symptoms:

> [A]lthough ALJ Condon was critical of Dr. Clarke for referring to Multiple Sclerosis (MS) when the neurologists had declined to make a definitive diagnosis,

5

Dr. Clarke's narrative statement indicated he treated Mr. Little for "signs and symptoms" of MS, as well as spondylolisthesis and degenerative changes in the lumbar spine with radiculopathy. (PageID.57- 58, 877) Thus, regardless of the final diagnosis, Dr. Clarke's findings that Mr. Little could stand and walk less than 2 hours of an eight hour day, sit about four hours in an eight hour day and needed to recline 25% of daytime hours, were largely related to Plaintiff's established back problems, and lower extremity pain and weakness. (PageID.875, 877-88).

Plaintiff's Brief (ECF No. 12, PageID.933).

Given this background, the ALJ addressed Dr. Clarke's opinion as follows:

In July 2017, treating primary care physician, Michael Clarke, M. D., completed a medical assessment of the claimant's abilities to perform work related activities (Exhibit 24F). Dr. Clarke opined the claimant could occasionally [sic] lift ten pounds occasionally and less than ten pounds frequently, stand and/or walk less than two hours and sit about four hours in an eight-hour workday, but would require the option to alternate between sitting, standing, and walking with an at will option to stand and walk. Dr. Clarke opined the claimant could sit or stand for five minutes at one time before requiring the need to change positions, and must walk around every 20 minutes for five minutes. Dr. Clarke added the claimant would need the ability to recline 25% of daytime hours, could frequently twist, occasionally stoop and crouch, rarely climb stairs, but never climb ladders (Exhibit 24F).

A treating physician's opinion must be given controlling weight when: 1) the opinion is well supported by acceptable clinical and laboratory diagnostic techniques and 2) the opinion is not inconsistent with the other substantial evidence in the case record (SSR 96-2p). In this case, the undersigned does not give controlling weight to Dr. Clarke's opinion because it is unsupported by the medical record prior to the date last insured. The undersigned assigns reduced weight and considered such factors as: (1) length of the treatment relationship and frequency of the examination, (2) the nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors.

Dr. Clarke indicates the earliest date these limitations apply is November 4, 2015, well over a year before he treated the claimant. In Exhibit 25F, a sworn statement, as discussed above, Dr. Clarke describes how he arrived at that date by comparing one physical examination from November 4, 2015 to the claimant's current physical examinations, mainly his vital signs, but he does not mention the October 2015 consultative examination [by Tama M. Abel, M.D.(PageID.432- 434)] or the fact the claimant was not taking any medications for pain or blood pressure in 2015. In addition, in his opinion, Dr. Clarke does not opine how often the claimant would be absent, any other physical functions affected by the claimant's impairments, environmental restrictions, nor does he add any medical findings to support his assessed limitations. Dr. Clarke began treating the claimant

in 2017, and diagnosed him with multiple sclerosis despite two neurologists examining the claimant and explaining why such a diagnosis was not warranted in 2016 or 2017. Objective testing and imaging in 2016 do not support the opinion of Dr. Clarke. The claimant testified much of his treatment began in 2017, including medication management and being prescribed a walker. While Dr. Clarke indicates he is treating the claimant for multiple sclerosis, he is primarily prescribing morphine and mediation [sic] management.

Dr. Clarke is relying on one record from November 4, 2015 where the claimant reported severe back pain with radiating symptoms. The positive straight leg raise test, a pulse rate and elevated blood pressure led him to find the claimant's problem has been severe since that date. However, in addition to dismissing the fact the claimant was not taking medications as offered including blood pressure medication, and refused to go through the process of insurance, Dr. Clarke does not address the claimant's history of alcohol and drug use, or a myriad of other causes that can add to hypertension and his elevated blood pressure and pulse rate. Dr. Clarke's progress notes do not explore other options of treatment including a referral to a neurosurgeon for evaluation. Overall, Dr. Clarke did not examine the claimant in 2015, [sic] reviewed one record without referencing the additional consultative examination available with objective testing. Dr. Clarke's opinion of the severity of the claimant's symptoms and opinion of less than sedentary work is not supported by the record prior to the date last insured and the undersigned assigns reduced weight to Dr. Clarke's July 2017 opinion.

PageID.57-58

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

7

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. § 404.1527(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Based on this record, the ALJ gave good reasons for assigning reduced weight to Dr. Clarke's opinion. The ALJ explained that Dr. Clarke did not treat plaintiff during the relevant time period and based his restrictions on a record review which did not include a consultative examination performed in October 2015. The reasons for giving Dr. Clarke deference as a treating physician do not exist in this case. "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Accordingly, plaintiff's claim of error will be denied.

**2. The ALJ erred by giving partial weight to the opinion of a non-examining consultant's Opinion.**

Plaintiff contends that the ALJ erred by giving partial weight to the opinion of non-examining physician, Nancy Armstrong, M.D. The ALJ addressed Dr. Armstrong's opinion as follows:

> As for the opinion evidence, in October 2015, a single decision maker reviewed the record for the State DDS and opined the claimant was able to lift and carry 20 pounds occasionally and 10 pounds frequently, sit for six hours and stand and/or walk for six hours in an eight-hour workday, occasionally climb, balance, stoop, kneel, crouch, and crawl (Exhibit lA). While the single decision maker is not an acceptable medical source, in March 2017, the record was reviewed by Nancy Armstrong, M.D., and she opined at the time of the date last insured, the assessment of light noted in the residual functional capacity of October 19, 2015 (Exhibit 1A) is supported (Exhibit 17F). The undersigned assigns partial weight to Dr. Armstrong's opinion, but added the claimant could not climb ladders, ropes or scaffolds due to his back conditions. The limited medical evidence including the consultative examination and the one physical examination in November 2015 exhibit the claimant having a normal gait with intact strength and mild difficulty moving around with mild difficulty with tandem gait. His range of motion of the lumbar spine was minimally reduced. Imaging six months later revealed mild degenerative disc disease and supports he was able to engage in light exertional work. Dr. Armstrong has an understanding of Social Security disability programs and their evidentiary requirements, and the undersigned assigns partial weight to her opinion.

PageID.56-57.

Dr. Armstrong agreed with the single decisionmaker, who reviewed plaintiff's medical records in October 2015 and concluded that plaintiff could perform a range of light work. PageID.150-152. In support of her determination, Dr. Armstrong relied, in part, on the "detailed" consultative examination done by Dr. Abel on October 8, 2015. PageID.432-434, 561. Given this record, the ALJ could give Dr. Armstrong's opinion partial weight. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."); 20 C.F.R. § 404.1527(c)(6) ("When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the medical opinion. For example, the amount of understanding of our disability programs . . ."). Accordingly, plaintiff's claim of error is denied.

9

**3. The ALJ failed to properly address plaintiff's symptoms (formerly credibility) as required by 20 C.F.R. 404.1529(c)(3) and SSR 16-3p.**

**4. The RFC determination failed to consider all plaintiff's well-documented impairments required by 20 C.F.R. § 404.1520a, SSR 98-6p and SSR 85-15.**

Plaintiff contends that the ALJ failed to address plaintiff's severe impairments of spondylolisthesis, multi-level degenerative disc disease, and somatic symptoms. Plaintiff's Brief at PageID.908-909. Plaintiff does not develop his arguments other than to state that the ALJ did not address these severe impairments. Contrary to plaintiff's claim, the ALJ addressed these severe impairments.

The ALJ's decision addressed plaintiff's spondylolisthesis and disc disease when evaluating plaintiff's back pain. The ALJ noted that in October 2015, plaintiff participated in the consultative examination with Dr. Abel with respect to his complaints of back problems (including fusion surgery when he was 13 years old), depression and anxiety. PageID.52. Upon examination, Dr. Abel concluded that plaintiff was likely experiencing mechanical back and neck pain. The ALJ continued:

> While the claimant reported back pain with straight leg raise testing, there was no evidence of nerve root irritation. In addition, while the claimant reported avoiding certain positions and activities as a result of the pain, he did not require an assistive device to ambulate. Dr. Abel did not assign any functional limitations and noted no requirement for an assistive device for ambulation (Exhibit 7F).

PageID.52.

In addition, the ALJ observed that:

> In November 2015, the claimant was evaluated at the Family Health Center where he reported lower back pain radiating down his leg with pain of 5/10 at rest and having difficulty with walking, standing, sitting, and his legs giving out. He added he was using 20 tabs of over the counter Tylenol per day (Exhibit 8F). Notably, the claimant had not been seen by a physician at the Family Health Center since May 2013 when he presented with anxiety (Exhibit 8F/5). Upon examination

10

in November 2015, the claimant was observed to be in no acute distress, his tenderness was minimal over the L5 region with worse pain when leaning back and sitting up. Straight leg raise testing was positive on left, he exhibited 5/5 strength, equal in lower extremities, positive deep tendon reflexes in the lower extremities, and equal sensation to light touch over the bilateral lower extremities. The claimant's motor examination demonstrated no dysfunction, and he was assessed with lumbago with sciatica and lumbar spondylolisthesis (Exhibit 8F/4). An MRI of the lumbar spine was recommended, but the claimant reported he did not have insurance to obtain one. When a suggestion was made for the claimant to speak with the social work to get an insurance plan, the claimant refused to go through the process and did not want to go to the other side of town to speak with a social worker. The claimant further denied a referral for physical therapy (Exhibit 8F/4). The claimant was prescribed lidocaine, venlafaxine, Neurontin, but was not prescribed Norco (Exhibit 8F/4). Despite his elevated blood pressure of 172/92, he refused medications blood pressure medications that were offered (Exhibit 8F/5).

PageID.52-53.

The ALJ concluded:

The undersigned finds the claimant's lumbar spondylolisthesis and degenerative disc disease post fusion surgery at age 13 along with degenerative disc disease of cervical, thoracic, and lumbar spine along with obesity prior December 31, 2015, the date last insured, supports he was limited to less than the full range of light work with standing or walking for up to four hours total in an eight-hour workday with only occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, but never climbing ladders, ropes, or scaffolds. At the time of his date last insured, he was engaged in minimal treatment, was not taking medications, and denied assistance to obtain insurance for imaging. Even after imaging, the mild findings do not rise to the level of alleged severity prior to December 31, 2015.

PageID.55.

Finally, with respect to plaintiff's somatic symptoms, the ALJ addressed plaintiff's mental health history and mental impairments throughout the decision. James Lozer, Ed.D., examined plaintiff on October 6, 2015. PageID.425-430. When the doctor asked plaintiff if he experienced somatic concerns, plaintiff replied, "My lower back and hips are the worst," rating his most severe pain as a 9 on a scale of 10. PageID.437. Dr. Lozer's diagnosis included "Somatic Symptom disorder with predominant pain." PageID.429.

11

> Ultimately, the ALJ gave some weight to Dr. Lozer's opinion:
>
>> Following his psychological consultative examination [in October 2015], Dr. Lozer opined the claimant had no limitation in his ability to perform and sustain work related function, no limitation in his ability to understand and remember simple instructions, and moderate limitation in his ability to sustain concentration and persistence in tasks, but no limitation in his ability to interact socially (Exhibit 6F). To the extent it is consistent with the assessed residual functional capacity, the undersigned assigns Dr. Lozer's opinion some weight. Dr. Lozer was able to examine the claimant in person and perform objective testing prior to providing his opinion. Without medication, the claimant's symptoms remained moderate in nature and he was able to drive, care for his personal hygiene, manage household finances, and travel long distances without assistance. Accordingly, Dr. Lozer's October 2015 opinion is consistent with the limited mental health treatment and the assessment was able to engage in simple work prior to his date last insured.

PageID.58. Contrary to plaintiff's contention, the ALJ addressed these severe impairments. Accordingly, plaintiff's claim of error is denied.

### B. The ALJ failed to give a complete hypothetical to the vocational expert (VE) and plaintiff is disabled based on the VE's testimony.

Finally, plaintiff sets out a brief argument that both the ALJ and VE committed errors with respect to the hypothetical question. An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990).

Plaintiff contends that the ALJ and the VE erred because "if the ALJ had given Dr. Clarke's opinions proper weight or included all Plaintiff's limitations in his RFC, Mr. Little would be disabled based on the VE testimony." Plaintiff's Brief at PageID.910. As discussed, the ALJ properly discounted Dr. Clarke's opinion. Plaintiff does not set out any limitations which the VE failed to address.[1] "[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118 (6th Cir. 1994). Accordingly, plaintiff's claim of error is denied.

### IV. CONCLUSION

Accordingly, the Commissioner's decision will be **AFFIRMED**. A judgment consistent with this opinion will be issued forthwith.

Dated: March 25, 2020              /s/ Ray Kent
                                   United States Magistrate Judge

---

[1] In his brief, plaintiff states that, "Having more than one to two unexcused absences per month on a regular and ongoing basis would also be work preclusive. (PageID.140)" Plaintiff's Brief at PageID.910. While the VE testified at PageID.141 that "based on professional experience, no more than one to two unexcused absences are typically tolerated per month in unskilled jobs and usually not on a regular and ongoing basis," plaintiff provides no context for this statement or the alleged error.

13